1  KEVIN C. LOMBARDI (DC BAR NO. 474114) (lombardik@sec.gov)
   IAN R. DATTNER (NY BAR NO. 4411187) (dattneri@sec.gov)
2  LISA WEINSTEIN DEITCH (CA BAR NO. 137492) (deitchl@sec.gov)

3  Attorneys for Plaintiff
   SECURITIES AND EXCHANGE COMMISSION
4  100 F Street, NE
   Washington, DC 20549
5  Telephone:  (202) 551-8753 (Lombardi)
   Facsimile:  (202) 772-9291 (Lombardi)

6

7

8                       UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11

   SECURITIES AND EXCHANGE COMMISSION,
12
            Plaintiff,
13                                                    **COMPLAINT**
       v.
14
   ARTHUR F. KNAPP, JR.,
15
            Defendant.
16

17        The Securities and Exchange Commission ("Commission") alleges as follows for its

18  complaint against defendant Arthur F. Knapp, Jr. ("Knapp"):

19                        <u>**SUMMARY OF ALLEGATIONS**</u>

20        1.       This case arises out of accounting, disclosure and internal accounting controls

21  failures from at least June 2010 through July 2012 by Knapp, the former Chief Financial Officer

22  ("CFO") of OCZ Technology Group, Inc. ("OCZ"), a now-bankrupt seller of computer memory

23  storage and power supply devices.

24

2.      Knapp instituted or maintained several policies and practices that caused OCZ to record transactions in a manner that was not in accordance with U.S. Generally Accepted Accounting Principles ("GAAP") and caused OCZ to report materially inflated revenues and/or gross profits.  These policies included (1) reclassifying costs of goods sold as research and development expenses, without sufficient basis to do so; (2) failing to capitalize labor and overhead costs in OCZ's inventory costs; (3) recognizing revenues upon product shipment, rather than upon delivery of the product to OCZ's customers; and (4) understating OCZ's accruals for product returns.

3.      As CFO, Knapp had responsibility for OCZ's internal accounting controls and procedures.  Nevertheless, he failed to implement sufficient internal accounting controls to prevent OCZ from misclassifying sales discounts as marketing expenses and significantly overstating its revenues and gross profits.  OCZ had put a program in place, called "customer based programs" or "CBPs," through which OCZ characterized credits given to customers as marketing expenses.  Although Knapp knew the criteria that had to be satisfied in order to classify the expenses as marketing under GAAP, Knapp failed to put controls in place to ensure the criteria were met.  As a result, OCZ mischaracterized sales discounts, which should have been reported as revenue reductions, as CBPs, which were improperly reported as marketing expenses.  As CBP expenses grew to over 5% of revenues and Knapp received information concerning potentially serious problems with OCZ's accounting for the programs, he failed to adequately address these issues.

4.      As a result of the accounting errors described above and other accounting errors, in October 2013, OCZ restated its financial statements to decrease previously reported revenues and gross profits by over $100 million from the second fiscal quarter of 2011 through the first

fiscal quarter of 2013[1] — a nearly 20% reduction in previously reported revenues and a significant reduction in previously reported gross profits.

5.     Knapp received profits from the sale of OCZ's stock and received a bonus during the period when OCZ's financial results were improperly inflated in public filings, which he signed.

6.     By engaging in the conduct described in this Complaint, Knapp violated the anti-fraud provisions of Sections 17(a)(2) and (3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(2) & (3)]; the internal controls provisions of Section 13(b)(5) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78m(b)(5)] and Exchange Act Rule 13b2-1 [17 C.F.R. § 240.13b2-1]; the certification provision of Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14]; and aided and abetted OCZ's violations of the reporting, books and records, and internal controls provisions of Sections 13(a) and 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)] and Exchange Act Rules 12b-20, 13a-1, 13a-11, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11 and 240.13a-13].

7.     The Commission seeks an order enjoining Knapp from future violations of the above provisions, requiring him to disgorge his ill-gotten gains with prejudgment interest and pay appropriate civil money penalties, and imposing upon him an officer and director bar.

---

[1]     OCZ's fiscal year ended at the end of the month of February.  Accordingly, the second fiscal quarter of 2011 consisted of the three months ending August 31, 2010, and the first fiscal quarter of 2013 consisted of the three months ending May 31, 2012.

SEC v. Knapp
Complaint

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v] and Sections 21 and 27 of the Exchange Act [15 U.S.C. §§ 78u and 78aa].

9.      Venue is proper in this judicial district pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v] and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain of the acts and omissions constituting violations alleged herein occurred in this judicial district.

10.      Knapp, directly and indirectly, made use of the mails and of the means and instrumentalities of interstate commerce in connection with the transactions, acts, practices, and courses of business described in this Complaint.

11.      Intradistrict Assignment.  Assignment to the San Jose Division is appropriate pursuant to Local Civil Rules 3-2(c) and 3-2(e) because a substantial part of the events which give rise to the claim occurred in the County of Santa Clara.

## DEFENDANT

12.      **Arthur Knapp**, age 66, was CFO of OCZ from November 2005 through March 2009 and from October 2010 through March 2013.  From March 2009 until October 2010, Knapp was OCZ's Vice President of Finance.  Prior to joining OCZ, Knapp served as the CFO of three other publicly-traded technology companies and, prior to that, spent ten years in public accounting.  Knapp was a licensed Certified Public Accountant in Pennsylvania but allowed that license to lapse in approximately 1980.  Knapp resides in San Jose, California.

## RELEVANT ENTITY

13.      **OCZ** was a Delaware corporation formed in 2002 that was headquartered in San Jose, California.  OCZ sold computer memory storage and power supply devices primarily to

SEC v. Knapp
Complaint

distributors, e-tailers, and original equipment manufacturers.  Shares of OCZ's stock traded on

the AIM Market of the London Stock Exchange plc ("AIM") from June 2006 through

April 2009.  OCZ's common stock was traded on the OTCBB from February 10, 2010 to

April 22, 2010, when it began trading on the NASDAQ Capital Market.  From 2010 through

2012, OCZ raised over $200 million from the sales of its shares to investors.  OCZ filed for

bankruptcy in December 2013.  On February 24, 2014, OCZ's common stock was de-listed from

NASDAQ.  On April 16, 2015, the Commission issued an Order Instituting Proceedings, Making

Findings and Revoking Registration of Securities Pursuant to Section 12(j) of the Securities

Exchange Act of 1934.  OCZ has liquidated its assets and is no longer operating.

## FACTS

*Overview*

16.     OCZ was founded in 2002 and engaged in a number of computer-related

businesses since its founding.  From approximately 2009 through its dissolution, OCZ primarily

focused upon selling solid state drives ("SSDs"), a new generation of computer storage drives

that OCZ promoted as being superior to traditional hard drives.  OCZ sought to capitalize upon

the expected growth of the SSD market.

15.     Statements made to investors in certain filings with the Commission, which were

signed by Knapp, emphasized OCZ's revenue growth and gross margin improvements.  OCZ

provided guidance concerning revenues and gross margins, and securities analysts focused on

these metrics.

16.     In late 2011, OCZ began negotiating with another technology company about the

possible sale of OCZ.  Revenue growth and gross margin improvements were important metrics

to the potential acquiring company.  Negotiations temporarily ceased, but started once again in

the Spring of 2012.  In June 2012, OCZ's Chief Executive Officer ("CEO") expressed in an email to Knapp concerns about the acquiring company's focus on revenues and gross profits. The CEO stated, "[i]f we don't have numbers that look reasonable on a high revenue raise and good Gross profit margins for q1 we will be lucky to trade over cash value and I am sure they will withdraw their offer completely."

17.     The merger discussions fell apart in mid-2012.  Shortly thereafter, certain of the improper accounting practices, which permitted OCZ to report artificially high revenue and gross profit growth from 2011 through 2013, came to light.  OCZ's stock price thereafter plummeted.

18.     In October 2013, OCZ issued a restatement of its financial results.  As reflected in the below table, in the period from the second quarter of fiscal 2011 through the first quarter of fiscal 2013, OCZ reduced revenues by over $102 million, reducing revenues by more than 48% in the quarter ending May 31, 2012:

| | Net Revenues (000s) | | | |
| --- | --- | --- | --- | --- |
| Quarter Ending | As Filed | Change | Restatement | % Overstated |
| 8/31/2010 | 38,045 | (3,224) | 34,821 | 9.3% |
| 11/30/2010 | 53,222 | (622) | 52,600 | 1.2% |
| 2/28/2011 | 64,566 | (5,586) | 58,980 | 9.5% |
| 5/31/2011 | 73,794 | (9,826) | 63,968 | 15.4% |
| 8/31/2011 | 78,454 | (2,058) | 76,396 | 2.7% |
| 11/30/2011 | 103,084 | (15,424) | 87,660 | 17.6% |
| 2/29/2012 | 110,442 | (28,306) | 82,136 | 34.5% |
| 5/31/2012 | 113,620 | (37,128) | 76,492 | 48.5% |
| | | | | |
| Totals | 635,227 | (102,174) | 533,053 | 19.2% |

19.     OCZ's reduction of its gross profits from the second quarter of fiscal 2011 as part of the restatement was even more dramatic, reducing gross profits by nearly $120 million from the second quarter of fiscal 2011 through the first quarter of fiscal 2013 as summarized in the following table:

SEC v. Knapp
Complaint

|  | Gross Profit (000s) | | |
| --- | --- | --- | --- |
| Quarter Ending | As Filed | Change | Restatement |
| 8/31/2010 | 1,620 | (3,372) | (1,752) |
| 11/30/2010 | 7,661 | (4,310) | 3,351 |
| 2/28/2011 | 10,709 | (4,940) | 5,769 |
| 5/31/2011 | 14,744 | (9,135) | 5,609 |
| 8/31/2011 | 16,931 | (10,104) | 6,827 |
| 11/30/2011 | 23,175 | (22,164) | 1,011 |
| 2/29/2012 | 27,586 | (28,823) | (1,237) |
| 5/31/2012 | 28,431 | (36,836) | (8,405) |
|  |  |  |  |
| Totals | 130,857 | (119,684) | 11,173 |

20.     In early December 2013, OCZ filed for bankruptcy protection.  It has since liquidated all of its assets and is no longer operating.

21.     As detailed further below, Knapp was responsible for a number of the issues that were restated and that resulted in OCZ's reporting materially inflated revenues and gross profits to investors.

**OCZ's Failure to Capitalize Labor and Overhead in Inventory Costs**

22.     Knapp instituted a policy that caused OCZ to improperly exclude labor and overhead costs in valuing inventory.

23.     Rather than capitalize labor and overhead in inventory costs, and then expense those costs as part of costs of goods sold ("COGS") when OCZ sold the inventory, Knapp expensed the labor and overhead costs as incurred and recorded them as operating expenses (*i.e.*, "below" the gross profit line).

24.     GAAP provides that "the primary basis of accounting for inventories is cost . . . cost means . . . the sum of the applicable expenditures and charges directly or indirectly incurred in bringing an article to its existing condition and location.  It is understood to mean acquisition

SEC v. Knapp
Complaint

and production cost . . ."  *See* Accounting Standards Codification ("ASC") 330-10-30.  Knapp knew or was reckless in not knowing that OCZ's failure to capitalize labor and overhead did not comply with GAAP.

25.     As a result of the failure to capitalize labor and overhead, OCZ materially understated COGS and materially overstated gross profits, in its books and records and on its financial statements from the second quarter of fiscal 2011 through the first quarter of fiscal 2013.  As part of the restatement, OCZ reclassified the expenses, resulting in a reduction in gross profits on a quarterly basis of between 8.6% and 86.9%.

***OCZ's Misclassification of Cost of Goods Sold as Research and Development Expenses***

26.     Knapp improperly reclassified expenses from COGS to research and development ("R&D") expenses.  These reclassifications caused gross profits to be inflated because costs that should have been included in COGS instead were recorded as part of operating expenses.

27.     The reclassified R&D expenses had been incurred to produce goods that OCZ later sold to its customers.  Accordingly, such costs should have been included within COGS under GAAP.  Knapp knew, was reckless in not knowing, or should have known that the reclassifications were inconsistent with GAAP.

28.     Knapp's reclassifications allowed OCZ to report higher gross margins in the first quarter of fiscal 2013.

29.     As a result of the reclassifications, OCZ materially understated its COGS and overstated its gross profits by approximately 23.2% in its books and records and in financial statements filed with the Commission in the first quarter of fiscal 2013.

SEC v. Knapp
Complaint

*OCZ's Premature Recognition of Revenues*

30.      Under Knapp's direction, OCZ's practice was to recognize revenue at the time of shipment of its products, even though its shipping terms with most customers provided that OCZ held title to those products until the customer took delivery.

31.      OCZ's revenue recognition practice was inconsistent with OCZ's shipping terms and GAAP, as OCZ had not earned the revenue until the product was delivered.

32.      Knapp knew, was reckless in not knowing, or should have known that OCZ's revenue recognition upon shipment was improper.

33.      In the fourth quarter of fiscal 2012, OCZ's auditor indicated that OCZ would no longer be able to recognize all sales upon shipment.  In response, Knapp instructed OCZ's sales team that customers who ordered goods at the end of subsequent quarters should sign so-called "title transfer" letters to purportedly allow OCZ to recognize the revenue upon shipment.  Under the terms of these letters, however, OCZ retained ownership and therefore revenue recognition on shipment was not appropriate under GAAP.  Moreover, some of the "title transfer" letters were signed after the end of the filing period, but were retroactively applied to purportedly change the terms of goods sold before the period end.

34.      As a result of the revenue recognition policies, OCZ materially overstated its revenues, gross profits, and income in its books and records and in financial statements filed with the Commission from the second quarter of fiscal 2011 through the first quarter of fiscal 2013. As part of the restatement, OCZ reversed approximately $9.2 million that had been recorded as revenue from fiscal 2011 through the first quarter of fiscal 2013 in instances where the goods were in transit and title had not passed to the customer.

SEC v. Knapp
Complaint

*OCZ's Understatement of Accruals for Product Returns*

35.     Under Knapp's direction, OCZ understated accruals for product returns.

36.     From the second quarter of fiscal 2011 through the second quarter of fiscal 2012, rather than recording an accrual against revenues equal to the sales value associated with the expected product returns, OCZ recorded an accrual only for the estimated gross margins associated with those sales.  As a result, OCZ's sales return accruals were approximately 20% of the value that they should have been.

37.     Knapp knew or was reckless in not knowing that this practice was inconsistent with GAAP.  In fact, Knapp sent an email in December 2011 attaching a spreadsheet that referred to OCZ's methodology as "non-GAAP."

38.     In the third quarter of fiscal 2012, OCZ's auditor informed OCZ that it should change its methodology concerning its product return accruals so that it accrued the sales value associated with the expected product return.  Knapp subsequently instituted the change.

39.     As a result of the improper methodology for product return accruals, OCZ overstated its revenues, gross profits, and income in its books and records and in financial statements filed with the Commission from the second quarter of fiscal 2011 through the second quarter of fiscal 2012.

*Mischaracterization of Sales Discounts as Marketing Expenses*

40.     In approximately 2010, OCZ's CEO instituted a program that he termed "customer based programs" or "CBPs," pursuant to which OCZ would purportedly offer short-term marketing programs to its customers.  Under these marketing programs, OCZ would purportedly pay its customers, by crediting the customers' accounts, for marketing OCZ's products.  The marketing credits, however, did not represent amounts that OCZ would have

SEC v. Knapp
Complaint

actually paid in independent transactions for the marketing performed.  CBPs were often nothing more than sales discounts, which OCZ should have recorded as reductions to revenue instead of marketing expenses.

41.     CBP expenses grew substantially between late 2010 and September 2012.  In fiscal 2011, total CBP expenses were approximately $6 million.  In the fourth quarter of fiscal 2012 alone, CBP expenses totaled over $4.7 million and in the first quarter of fiscal 2013, CBP expenses totaled approximately $7.5 million.  By mid-2012, virtually all sales discounts were classified as CBPs and reported as marketing expenses, rather than reductions to revenue.

42.     GAAP provides that when a vendor, such as OCZ, provides consideration to a customer, including marketing credits, the consideration must be recorded as a reduction of revenue unless two criteria are met: (1) the vendor receives an identifiable benefit for consideration that is sufficiently separable from the recipient's purchase of the vendor's products such that the benefit could have been obtained from a party other than the purchaser of the product; and (2) the vendor can reasonably estimate the fair value of the benefit.  *See* ASC 605-50-45.

43.     OCZ's accounting for CBPs failed to meet this standard because (a) the purported marketing was not separable from customers' purchase of OCZ goods; and (b) the fair value of the purported marketing did not equal the consideration paid to OCZ's customers.  Indeed, some customers that received CBP "credits" performed no marketing in exchange.

44.     Knapp knew the GAAP that applied to marketing programs such as the CBPs. However, Knapp did not put adequate policies in place to ensure that OCZ properly recorded CBPs as sales discounts and not as marketing expenses.  Although OCZ's auditor identified the lack of accounting policies concerning marketing and incentive programs as a deficiency in June

2011 and recommended that "[s]pecific accounting policies and methodology used in determining the sales and marketing programs (and related income statement classification) should be formally documented and reconciled to the appropriate accounting literature," Knapp failed to implement sufficient accounting policies concerning valuation of the marketing activities or to otherwise ensure that CBPs were properly recorded within OCZ's books and records.

45.     Knapp ignored the significant growth in CBP expenses and corresponding decrease in sales discounts and other significant red flags indicating that the programs were being misused as a means to disguise sales discounts.  For example, in a June 2012 email, Knapp was warned that advanced CBP funds promised to customers (for marketing that customers would purportedly provide in the future) "appear[ ] as an ***incentive for current sales***" which would result in a "***[h]uge revenue recognition . . . issue***."  (emphasis added).  Notwithstanding these issues, Knapp failed to determine whether OCZ's financial statements needed to be corrected, and he failed to improve OCZ's internal controls.

46.     Knapp's failure to put adequate internal accounting controls in place in connection with CBPs allowed OCZ to improperly report sales discounts as marketing expenses in its filings with the Commission.  Moreover, in the first quarter of fiscal 2013, Knapp knew, was reckless in not knowing, or should have known that sales discounts had been mischaracterized as CBPs in OCZ's books and records.  Nevertheless, Knapp signed and certified the Form 10-Q for the first quarter of fiscal 2013 ending May 31, 2012, which overstated net revenues and gross profits as a result of the mischaracterization.

SEC v. Knapp
Complaint

*Misrepresentations in Commission Filings*

47.     Knapp's actions, as described above, resulted in material misrepresentations in the following OCZ filings with the Commission:

   a.  OCZ's annual reports on Form 10-K for the years 2011 and 2012, each of which was signed and certified by Knapp;

   b.  OCZ's quarterly reports on Form 10-Q for the periods ending August 31, 2010, November 30, 2010, May 31, 2011, August 31, 2011, November 30, 2011 and May 31, 2012, each of which was signed and certified by Knapp;

   c.  OCZ's current reports on Form 8-K, filed on July 10, 2012, May 1, 2012, January 9, 2012, October 5, 2011, July 6, 2011, May 3, 2011, January 10, 2011 and October 12, 2010, each of which was signed by Knapp;

   d.  OCZ's Form S-8 dated December 22, 2010, which was signed by Knapp, and incorporated by reference one or more of the misstated financial statements;

   e.  OCZ's Form S-8 dated October 14, 2011, which was signed by Knapp, and incorporated by reference one or more of the misstated financial statements; and

   f.  OCZ's Form S-3 dated December 1, 2011, which was signed by Knapp, and incorporated by reference one or more of the misstated financial statements.

48.     Knapp also falsely certified in OCZ's quarterly reports for the period ending August 31, 2010 through the period ending May 31, 2012 and in OCZ's annual reports for 2011 and 2012 that, he reviewed each of the reports and that he designed internal control over financial reporting, or caused such internal control over financial reporting to be designed under

SEC v. Knapp
Complaint

his supervision, to provide reasonable assurance regarding the reliability of financial reporting

and the preparation of financial statements for external purposes in accordance with GAAP.

## FIRST CLAIM FOR RELIEF

**Fraud in the Offer or Sale of Securities: Violating Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) & (3)]**

49.     Paragraphs 1 through 48 are realleged and incorporated by reference herein.

50.     Knapp, by engaging in the conduct described above, directly or indirectly, in the

offer or sale of securities by the use of means or instruments of transportation or communication

in interstate commerce or by the use of the mails:

      a.   obtained money or property by means of untrue statements of material fact or

          by omitting to state material facts necessary in order to make the statements

          made, in light of the circumstances under which they were made, not

          misleading; and

      b.   engaged in transactions, practices, or courses of business which operated or

          would operate as frauds or deceits upon the purchasers.

51.     By engaging in the conduct described above, Knapp violated, and unless

restrained and enjoined, will in the future violate, Section 17(a)(2) and (3) of the Securities Act

[15 U.S.C. §§ 77q(a)(2) & (3)].

## SECOND CLAIM FOR RELIEF

**Failure to Implement Controls: Violating Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)]**

52.     Paragraphs 1 through 48 are realleged and incorporated by reference herein.

53.     Knapp, by engaging in the conduct described above, knowingly failed to

implement a system of internal accounting controls.

SEC v. Knapp
Complaint

54.     By engaging in the conduct described above, Knapp violated, and unless restrained and enjoined, will in the future violate Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)].

## THIRD CLAIM FOR RELIEF

**Falsified Books, Records, or Accounts: Violating Rule 13b2-1 of the Exchange Act
[17 C.F.R. § 240.13b2-1]**

55.     Paragraphs 1 through 48 are realleged and incorporated by reference herein.

56.     Knapp, by engaging in the conduct described above, directly or indirectly, falsified or caused to be falsified OCZ's books, records, and accounts subject to Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

57.     By engaging in the conduct described above, Knapp violated, and unless restrained and enjoined, will in the future violate Rule 13b2-1 of the Exchange Act [17 C.F.R. § 240.13b2-1].

## FOURTH CLAIM FOR RELIEF

**False Certifications: Violating Rule 13a-14 of the Exchange Act
[17 C.F.R. § 240.13a-14]**

58.     Paragraphs 1 through 48 are realleged and incorporated by reference herein.

59.     Knapp falsely certified in OCZ's quarterly reports for the period ending August 31, 2010 through the period ending May 31, 2012 and in OCZ's annual reports for 2011 and 2012 that he reviewed each of the reports and that he designed internal control over financial reporting, or caused such internal control over financial reporting to be designed under his supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with GAAP.

SEC v. Knapp
Complaint

60.     By engaging in the conduct described above, Knapp violated, and unless restrained and enjoined, will in the future violate Rule 13a-14 of the Exchange Act [17 C.F.R. § 240.13a-14].

### FIFTH CLAIM FOR RELIEF

**Reporting Violations: Aiding and Abetting OCZ's Violations of Section 13(a) and Rules 12b-20, 13a-1. 13a-11 and 13a-13 of the Exchange Act
[15 U.S.C. § 78m(a) and 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11 and 240.13a-13]**

61.     Paragraphs 1 through 48 are realleged and incorporated by reference herein.

62.     OCZ violated Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], and Rules 12b-20, 13a-1, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1 and 240.13a-13], by filing with the Commission materially false and misleading periodic reports, including annual and quarterly reports on Forms 10-K and 10-Q from the period ending August 31, 2010 through the period ending May 31, 2012.  OCZ also violated Rule 13a-11 of the Exchange Act [17 C.F.R. § 240.13a-11], by filing with the Commission false and misleading current reports on Forms 8-K reporting false and misleading financial results for the period ending August 31, 2010 through the period ending May 31, 2012.

63.     Knapp, by engaging in the conduct described above, knowingly or recklessly provided substantial assistance to OCZ's violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], and Rules 12b-20, 13a-1, 13a-11 and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11 and 240.13a-13].

64.     By engaging in the conduct described above, and pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Knapp aided and abetted OCZ's violations, and unless restrained and enjoined, will in the future aid and abet violations of Section 13(a) of the

SEC v. Knapp
Complaint

Exchange Act [15 U.S.C. § 78m(a)], and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11 and 240.13a-13].

## SIXTH CLAIM FOR RELIEF

**Internal Controls / Recordkeeping Violations: Aiding and Abetting OCZ's Violations of Sections 13(b)(2)(A) and (B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and (B)]**

65.     Paragraphs 1 through 48 are realleged and incorporated by reference herein.

66.     OCZ violated Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)], by failing to make or keep books, records, and accounts that in reasonable detail accurately and fairly reflected its transactions and disposition of its assets.  OCZ violated Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)], by failing to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP and to maintain accountability of assets.

67.     Knapp, by engaging in the conduct alleged above, knowingly or recklessly provided substantial assistance to OCZ's violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)].

68.     By engaging in the conduct described above, and pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Knapp aided and abetted OCZ's violations, and unless restrained and enjoined, will in the future aid and abet violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)].

SEC v. Knapp
Complaint

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court:

A.  Permanently enjoin Knapp from (i) violating Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. § 77q(a)(2) and (3)], Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)], and Exchange Act Rules 13a-14 [17 C.F.R. § 240.13a-14] and 13b2-1 [17 C.F.R. § 240.13b2-1]; and (ii) aiding and abetting violations of Exchange Act Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) [15 U.S.C. §§ 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B)] and Exchange Act Rules 12b-20, 13a-1, 13a-11, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11 and 240.13a-13];

B.  Order that Knapp disgorge his ill-gotten gains obtained as a result of the conduct alleged in this Complaint, with prejudgment interest;

C.  Order that Knapp pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] in an amount to be determined by the Court;

D.  Order that Knapp be permanently prohibited from acting as an officer or director of any issuer that has a class of securities registered pursuant to Exchange Act Section 12 [15 U.S.C. § 78l], or that is required to file reports pursuant to Exchange Act Section 15(d) [15 U.S.C. § 78o(d)]; and

SEC v. Knapp
Complaint

E.   Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.


Date:   October 6, 2015                          /s/ Kevin Lombardi_____
                                                 Kevin Lombardi, Trial Attorney
                                                 District of Columbia Bar No. 474114
                                                 Division of Enforcement
                                                 Securities and Exchange Commission
                                                 100 F Street, N.E.
                                                 Washington, D.C. 20549
                                                 Tel:  (202) 551-8753
                                                 Fax: (202) 772-9292
                                                 Email: lombardik@sec.gov

Of Counsel:
Lisa Weinstein Deitch
California Bar No. 137492
Ian R. Dattner
New York Bar No. 4411187
Division of Enforcement
Securities and Exchange Commission

SEC v. Knapp
                 Complaint